UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 07-CR-0212(1) (PJS/JSM) |
| Plaintiff, | |
| v. | ORDER |
| MICHAEL FIORITO, a/k/a Michael Fiori, a/k/a Michael Fiore, a/k/a Michael Fiorto, | |
| Defendant. | |

David J. MacLaughlin, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Michael Fiorito, pro se; Douglas B. Altman, ALTMAN & IZEK, standby counsel for defendant.

This matter is before the Court on three pretrial motions of defendant Michael Fiorito. Fiorito moves: (1) for permission to conduct voir dire [Docket No. 172]; (2) to dismiss the superseding indictment [Docket No. 218]; and (3) for permission to use compliance with state law as part of his defense [Docket No. 216].

*Motion for Permission to Conduct Voir Dire*

The Court denies Fiorito's motion for permission to conduct voir dire. Neither Fiorito nor the government will be permitted to conduct voir dire. Instead, the Court will conduct voir dire itself. The Court will consider the parties' proposed voir dire questions in determining what questions to ask jurors during voir dire — and, after the Court has completed its voir dire, the Court will ask the parties, out of the hearing of the jury, whether the parties would like the Court to ask any additional questions.

*Motion to Dismiss the Indictment*

The Court also denies Fiorito's motion to dismiss the superseding indictment. To a significant extent, Fiorito supports his motion by arguing that he is innocent of mail fraud. He complains, for example, that he did not cause various mailings to be made at all — or that, if he did cause them to be made, he did not do so in furtherance of any scheme to defraud. But these arguments go to the *veracity* of the allegations — not to their *adequacy* — and thus they do not justify dismissal of the indictment. It is for the jury to determine whether the indictment's allegations are true.

Other arguments made by Fiorito are based on fundamental misunderstandings of the mail-fraud statute, 18 U.S.C. § 1341. For example, Fiorito seems to believe that, under the statute, the requisite mailing must have been of a false or fraudulent statement or must have been to or from an alleged victim of the offense. Neither is required by the statute. Fiorito also seems to argue that he cannot be convicted of violating § 1341 unless he caused a "loss" to a victim, and that none of his alleged victims suffered a "loss" — even if Fiorito took money to which he was not entitled — because "each alleged victim was considerably better off after their dealings with Michael Fiorito." Mot. Dismiss at 12 [Docket No. 218]. Under Fiorito's tortured logic, if a victim was entitled to receive $20,000 at the closing of a refinancing, and Fiorito stole $5,000 of that money, Fiorito caused no "loss" to the victim because he still helped the victim to save her home. This is akin to arguing that a patient whose wallet is stolen by his surgeon suffers no "loss" if the surgeon also saves his life. The argument is absurd. If, after closing a real-estate transaction, a victim did not receive all of the money to which she was entitled because Fiorito

stole some of her money, then the victim most certainly suffered a "loss," no matter how much she benefitted from the overall transaction.

Fiorito's understanding of the conspiracy statute is similarly flawed. Fiorito argues that, in referring to a conspiracy "to commit any offense against the United States," 18 U.S.C. § 371 is referring only to conspiracies to steal money from or otherwise victimize the United States government. Fiorito is incorrect. The Eighth Circuit has been clear on the point:

> As we have previously noted, the phrase "offenses against the United States" is used by Congress to denote "offenses against the laws of the United States." *Thomas v. United States*, 156 F. 897, 900-01 (8th Cir. 1907). As a result, section 371 does not require a conspiracy against the United States, only a conspiracy to violate the laws of the United States. *Id.* at 901. Because the government sufficiently alleged that Tramp conspired to violate the mail and wire fraud statutes, the indictment under section 371 for conspiracy was valid.

*Tramp v. United States*, 978 F.2d 1055, 1055 (8th Cir. 1992) (per curiam).

Fiorito also makes various arguments challenging the applicability of the mail-fraud statute to the facts of this case. For instance, Fiorito contends that he cannot be prosecuted for mail fraud because the existence of state and federal laws prohibiting equity stripping shows that Congress did not intend to allow prosecutions under § 1341 for equity stripping. But it is common for a single criminal act — or a series of criminal acts — to simultaneously violate multiple state and federal criminal statutes, and prosecutors may exercise their discretion in choosing what statutory violations to charge. If Fiorito's conduct meets the elements of the mail-fraud statute, then he can be convicted of mail fraud, whether or not he can also be convicted of violating anti-equity-stripping statutes (or any other statutes).

Fiorito further contends that § 1341 is unconstitutionally vague as applied to his conduct and violates "principles of federalism . . . by criminalizing conduct which is strictly regulated by state law." Mot. Dism. at 2. Section 1341 is indeed very broad, as many criminal defendants have learned over the years. But that does not mean that § 1341 is unconstitutionally vague, particularly when, as is true here, the alleged underlying fraud is specific and concrete.[1] Moreover, nothing prevents Congress from criminalizing conduct that is also regulated by state law. Congress does so routinely. For instance, there are parallel sets of state and federal laws against drug possession and distribution.

Fiorito finally challenges the sufficiency of the allegations in the indictment with respect to the mailings associated with counts 2 through 7. But the indictment clearly and specifically alleges all of the elements necessary to establish a violation of § 1341. The indictment alleges, in essence, that Fiorito devised a scheme to defraud homeowners of the equity in their homes by, first, inducing those homeowners to refinance their mortgages or sell their homes and then, second, stealing some or all of the resulting proceeds. The indictment further alleges that, for the purpose of carrying out this scheme, Fiorito mailed some matter or caused some matter to be mailed or delivered by private carrier — and the indictment identifies, with respect to each

---

[1] Fiorito's challenge to his indictment would be more plausible if he were accused of honest-services mail fraud. *See Sorich v. United States*, 129 S. Ct. 1308, 1310 (2009) (Scalia, J., dissenting from denial of certiorari) ("There is a serious argument that [the statute defining honest-services fraud, 18 U.S.C.] § 1346[,] is nothing more than an invitation for federal courts to develop a common-law crime of unethical conduct. But the notion of a common-law crime is utterly anathema today, and for good reason. It is simply not fair to prosecute someone for a crime that has not been defined until the judicial decision that sends him to jail.") (quotations and citations omitted).

count, precisely what "matter" Fiorito mailed or caused to be mailed or delivered by private carrier. If these allegations are true, then Fiorito has committed mail fraud.

As noted, Fiorito insists that some of these allegations are not true; he argues, for example, that some of these mailings could not have been made in furtherance of the alleged scheme to fraud. Again, though, the veracity of the allegations is for the jury to decide. This Court may only rule on the adequacy of the allegations. The allegations of the superseding indictment are adequate, and thus Fiorito's motion to dismiss is denied.

*Motion to Use Compliance with State Law as a Defense*

Fiorito's third motion is styled "Motion to Use Compliance with State Law as Part of Good Faith Defense." Fiorito asks to be able to introduce evidence that "at every stage of my business I complied with state law" and that "I spent a considerable amount of money hiring civil attorneys to help me navigate the real estate and consumer protection laws." State-Law Mot. at 1 [Docket No. 216]. This evidence, Fiorito asserts, "will prove that my 'intent' was to obey the law." *Id.*

It is certainly true that the government must establish that Fiorito acted with culpable intent for a jury to convict him of the crimes charged in the indictment. Specifically, to convict him of violating § 1341, the jury must find that Fiorito acted with the intent to defraud. *See DeMier v. United States*, 616 F.2d 366, 369 (8th Cir. 1980). And to convict him of violating § 371, the jury must find that Fiorito voluntarily and intentionally joined in a conspiracy to commit mail fraud and knew of the conspiracy's purpose. *See United States v. Burchinal*, 657 F.2d 985, 990 (8th Cir. 1981) (holding that "an individual becomes a member of a conspiracy when the person knowingly contributes his or her efforts in furtherance of the objectives of the

conspiracy"). And thus, evidence offered by Fiorito that tends to show that he did not have an intent to defraud or did not intend to conspire to commit mail fraud will generally be admissible at trial, subject, of course, to the exceptions provided in the Federal Rules of Evidence.

That said, the evidence that Fiorito describes in his motion is not admissible for the purpose that Fiorito identifies. As the Court reads his motion, Fiorito seeks to introduce character evidence. Specifically, Fiorito seeks to show that he was an honest and a law-abiding businessman by introducing evidence that, in conducting his business, he sought legal advice and complied with the law. Because he was an honest and law-abiding businessman, Fiorito wishes to argue, it is unlikely that he knowingly violated the law in his dealings with his alleged victims.

Under Rule 404(a)(1) of the Federal Rules of Evidence, Fiorito is permitted to offer "evidence of a pertinent trait of [his] character . . . ." Fed. R. Evid. 404(a)(1). Thus he may prove that, in general, he is a law-abiding or honest person. But under Rule 405(a), the only evidence that Fiorito may introduce to prove that he is law-abiding or honest — or to prove another pertinent character trait — is "testimony as to reputation or . . . testimony in the form of an opinion." Fed. R. Evid. 405(a).

Thus, Fiorito may call a witness, and that witness, after describing in a sentence or two how he is acquainted with Fiorito, may testify that, in his opinion, Fiorito is a law-abiding or honest person. But the witness may go no further. The witness may not testify regarding specific instances of Fiorito's conduct — that is, the witness may not testify about occasions on which Fiorito complied with the law or acted honestly. Only if the government were to "open the door" by cross-examining a character witness about specific instances of unlawful or

dishonest conduct would Fiorito be able to respond by asking the witness, on redirect, about specific instances of lawful or honest conduct.

Testimony about occasions on which Fiorito complied with state law is not only barred by Rule 405, but at least some of that testimony is likely barred by Rule 402.  Again, the government has alleged that Fiorito devised a scheme to defraud homeowners of the equity in their homes by, first, inducing those homeowners to refinance their mortgages or sell their homes and then, second, stealing some or all of the resulting proceeds.  The government (with a couple of exceptions) does not allege that there was anything wrong with the closings; the government concedes that (with a couple of exceptions) all of the paperwork was in order.  What the government alleges is that, after perfectly legal closings, Fiorito stole money that belonged to the homeowners.  Evidence that all legal formalities were observed during a closing would not in any way rebut evidence that, *after* the closing, Fiorito stole funds to which a homeowner was entitled by virtue of having just completed a perfectly legal closing.

It is conceivable that Fiorito could offer admissible evidence about advice that he received about state law or about attempting to comply with state law.  For that reason, the Court will deny without prejudice Fiorito's "Motion to Use Compliance with State Law as Part of Good Faith Defense."  Should Fiorito wish to introduce during the trial a particular item of evidence regarding his compliance with a particular state law, he should bring that evidence to the attention of the Court, and the Court will rule on its admissibility at that time.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Michael Fiorito's motion for permission to conduct voir dire [Docket No. 172] is DENIED.

2. Defendant Michael Fiorito's motion to dismiss the indictment [Docket No. 218] is DENIED.

3. Defendant Michael Fiorito's motion for permission to use compliance with state law as part of his defense [Docket No. 216] is DENIED WITHOUT PREJUDICE.

Dated: April 22, 2009              s/Patrick J. Schiltz
                                   Patrick J. Schiltz
                                   United States District Judge